IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-252-FL

NANCY KERNS STRICKLAND,          )
                                 )
        Plaintiff/Claimant,      )
                                 )
                                 )        **MEMORANDUM AND**
        v.                       )        **RECOMMENDATION**
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security, )
                                 )
        Defendant.               )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Nancy Kerns Strickland ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB on July 15, 2012, alleging disability beginning August 8, 2008. (R. 163–64). Her Title II claim was denied initially and upon reconsideration. (R. 73–107). A hearing before the ALJ was held on August 5, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R.

31–72). On December 12, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 8–30). On May 17, 2016, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 13). Next, the ALJ determined Claimant had the

3

severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, asthma, an affective disorder, and an anxiety disorder. (R. 13–14). The ALJ also found that Claimant's alleged fibromyalgia was a non-medically determinable impairment. (R. 14). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14–16). Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform a limited range of light work[1] as follows:

> [S]he can stand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. She can occasionally stoop and crouch. Regarding the neck, she can perform flexion and rotation frequently[.] She can have frequent exposure to humidity (as defined in the Selected Characteristics of Occupations). Regarding respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation), she can work in situations up to but excluding concentrated exposure (e.g., a manufacturing floor or construction site). She can understand, remember, and perform work tasks at GED Reasoning Level 03 and can perform productive work tasks for up to an average of 95 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can have frequent contact with the general public. She can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis).

(R. 16–21). In making this assessment, the ALJ found Claimant's statements about her limitations partially credible. (R. 17–21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 22). Nonetheless, at step five, upon

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

Claimant alleges the following errors: (1) failure to find Claimant's fibromyalgia was a medically determinable impairment and failure to consider Claimant's migraine headaches and sleep apnea; (2) failure to appropriately weigh the opinion evidence; (3) failure to appropriately evaluate Claimant's credibility; (4) failure to perform the requisite function-by-function analysis; (5) failure to pose a sufficient hypothetical to the VE; and (6) failure by the Appeals Council to consider new evidence. Pl.'s Mem. [DE-21] at 6–20.

## V. DISCUSSION

### A.     Step Two–Severity

Claimant contends the ALJ erred at step two in determining her fibromyalgia was a non-medically determinable impairment and failing to consider whether her migraine headaches and sleep apnea were severe impairments. Pl.'s Mem. [DE-21] at 8–9. The Commissioner counters that the ALJ applied the appropriate standard in evaluating Claimant's fibromyalgia at step two and that Claimant failed to carry her burden of demonstrating her migraine headaches and sleep apnea were severe, because she presented no evidence they caused functional loss. Def.'s Mem. [DE-24] at 6–8.

At step two the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work

5

activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. § 404.1522 (defining non-severe impairments). The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008). Thus, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps).

### 1. Fibromyalgia

A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508.[2] The Social Security Administration defines fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft

---

[2] This regulation was removed, effective for claims filed on or after March 27, 2017, and, therefore, still applies to the claim at issue. 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

tissues that has persisted for at least 3 months." S.S.R. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). "Generally, a person can establish that he or she has [a medically determinable impairment] of [fibromyalgia] by providing evidence from an acceptable medical source." *Id.* However, a diagnosis alone is not sufficient, rather "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.*

In evaluating fibromyalgia, the ALJ considers the physician's treatment notes, the claimant's symptoms over time, and the physician's assessment over time of the claimant's physical strength and functional abilities. *Id.* A claimant's fibromyalgia is considered a medically determinable impairment when one of two sets of criteria[3] are met: a physician diagnosed fibromyalgia and provided evidence of (1) a history of widespread pain; at least 11 positive tender points on physical examination; and other disorders that could cause the symptoms or signs were excluded; *or* (2) a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and other disorders that could cause the aforementioned symptoms were excluded. *Id.* at *2–3. The fibromyalgia "signs" and "symptoms" may include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or memory problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste,

---

[3] The first set of criteria is based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia (the "1990 Criteria") and the second on the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria"). S.S.R. 12-2p, 2012 WL 3104869, at *2.

change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* at *3 n.9. The "co-occurring conditions" may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.* at *3 n.10. Finally, the physician's diagnosis must be consistent with other evidence in the record. *Id.* at *2.

At step two the ALJ considered Claimant's fibromyalgia, but determined it was a non-medically determinable impairment. (R. 14). The ALJ explained as follows:

> [T]he claimant's alleged fibromyalgia constitutes a non-medically determinable impairment. The Sections 223(d)(3) and 1614(a)(3)(D) of the Social Security Act define a "physical or mental impairment" as an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically-acceptable clinical and laboratory diagnostic techniques. A medically-determinable impairment may not be established based solely on the basis of a claimant's allegations regarding symptoms (20 CFR 404.1508, 404.1529, 416.908, 416.929, and SSR 96-4p[)]. There must be evidence from an "acceptable medical source" in order to establish the existence of a medically-determinable impairment (20 CFR 404. 1513(a), 416.913(a), and SSR 06-03p) that can reasonably be expected to produce the symptom(s).
>
> The undersigned is not persuaded that the claimant's allegation of fibromyalgia is consistent with SSR l2-2p, as the record reveals a diagnosis during a one-time consultative examination. There are no rheumatologic findings noted in association with this diagnosis (Exhibit 7F). Dr. Crane is neither a rheumatologist nor a treating source. Moreover, the record does not otherwise reveal observations, repeated manifestations of fibromyalgia symptoms or evidence that other disorders were excluded. Despite the claimant's treatment for joint pain during the period in question, the record reveals that it is not as severe or limiting as alleged. In short, since there is no diagnosis of fibromyalgia that is consistent with SSR 12-2p in the record, the claimant's alleged fibromyalgia is deemed a non-medically determinable impairment.

*Id.*

The ALJ's reliance on Dr. Crane's report to evaluate whether Claimant's fibromyalgia is a

medically determinable impairment reflects a gross misunderstanding of the medical record. Exhibit 7F is a report from a *psychological* consultative examination in 2012 and was not related to assessing Claimant's alleged fibromyalgia or any other physical impairments.[4] (R. 510–12). As a result, the fact that Dr. Crane is neither a rheumotologist nor a treating source is irrelevant to the Ruling 12-2p inquiry, because he was not evaluating Claimant's fibromyalgia. Moreover, Dr. Crane did not diagnose Claimant with fibromyalgia, but rather reported her statement that she had a "history of fibromyalgia that was diagnosed *some years ago*" and noted it on Axis III of the diagnostic impressions along with the other physical problems she reported. (R. 510) (emphasis added). The record reflects that Claimant was diagnosed with fibromyalgia long before she saw Dr. Crane for a psychological consultation, and earlier treatment notes in the record are replete with references to Claimant's fibromyalgia diagnosis by her primary care provider, Dr. Franco.[5] *See, e.g.*, (R. 515–59) (treatment notes spanning from January 2009 through August 2012 listing fibromyalgia diagnosis). Accordingly, the ALJ erred in relying on Dr. Crane's psychological consultative report to evaluate whether Claimant's fibromyalgia was a medically determinable impairment under Ruling 12-2p.

The ALJ also found that certain other Ruling 12-2p criteria were not met. The ALJ stated that the record contained no "observations, repeated manifestations of fibromyalgia symptoms or evidence that other disorders were excluded," which appears to address the 2010 Criteria. (R. 14). However, the record contains repeated references to more than six fibromyalgia symptoms, signs, or co-occurring conditions, including fatigue or tiredness, waking unrefreshed, depression, anxiety

---

[4] While Ruling 12-2p provides that the agency "may request evidence from other acceptable medical sources, such as psychologists, both to determine whether the person has another MDI(s) and to evaluate the severity and functional effects of FM," 2012 WL 3104869, at *4, it is apparent that the ALJ did not utilize Dr. Crane's report for this purpose.

[5] It is noteworthy, although not determinative, that on initial review and reconsideration of Claimant's application, Claimant's fibromyalgia was found to be a severe medically determinable impairment. (R. 78, 96).

disorder, irritable bowel syndrome, migraine headaches, muscle weakness, numbness or tingling, and abdominal pain. *See, e.g.,* (R. 294–96, 447–49, 451–508, 510–12, 600, 676–78, 788, 792–93, 803, 820, 823, 849–53, 858–59, 875–78). There are also records related to an October 31, 2008 consultation to rule out rheumatoid arthritis (R. 949–52), which is one of the specific examples in Ruling 12-2p of conditions to be excluded, 2012 WL 3104869, at *3 n.7. Thus, the ALJ's findings are not supported by the medical evidence of record. In light of the "depth and ambivalence of the medical record," the court is unable to conduct a "meaningful review" of the ALJ's decision.[6] *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013).

Finally, it appears that key evidence related to Claimant's fibromyalgia was not included in the record. At the administrative hearing, Claimant's counsel advised the ALJ that Claimant was being treated for fibromyalgia at the time of her alleged onset date in August 2008, and Claimant testified at the administrative hearing that her problems started with fibromyalgia and her primary care provider sent her to Chapel Hill where she was diagnosed with fibromyalgia, "looking at all the points."[7] (R. 35, 38–39, 60). This evidence, from which it can be reasonably inferred that Dr. Franco sent Claimant to a specialist who diagnosed her with fibromyalgia in 2008, after administering a tender-points test, may be highly probative of whether the 1990 Criteria were met. S.S.R. 12-2p, 2012 WL 3104869, at *2–3 (listing the 1990 Criteria, including the requirement of at

---

[6] The ALJ did not address all the Ruling 12-2p criteria, including whether Claimant had a history of widespread pain. It is unclear whether the ALJ conceded that this requirement was met or felt no need to consider it because he believed other requisite criteria were absent. In any event, it is not the court's role to weigh such evidence in the first instance. *Radford*, 734 F.3d at 296.

[7] Although fibromaylgia symptoms are subjective, "a 'tender points' test where a patient expresses pain in response to the doctor pressing certain locations" is sometimes utilized to assist in diagnosing fibromyalgia. *Smith v. Colvin*, No. 3:13-CV-00570-MOC, 2014 WL 2159122, at *5 (W.D.N.C. May 23, 2014) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996)).

least 11 positive tender points on physical examination). Yet these key medical records are absent from the administrative record, and the ALJ did not expressly consider the 1990 Criteria. (R. 14). When the evidence is insufficient to determine whether fibromyalgia is a medically determinable impairment, the ALJ may take several steps to remedy the deficiency, such as recontacting the treating source, requesting additional existing records, or obtaining a consultative examination. S.S.R. 12-2p, 2012 WL 3104869, at *4. The ALJ appeared to recognize that this material evidence was missing from the record (R. 35), but it is not evident that he attempted to fill this material evidentiary gap. *See Pearson v. Comm'r of Soc. Sec. Admin.*, No. CV 1:16-2726-PMD-SVH, 2017 WL 1378197, at *17 (D.S.C. Mar. 29, 2017) ("Because the ALJ did not take any steps to resolve the insufficiency, he did not properly reject the diagnosis of fibromyalgia based on the absence of evidence in the record to show other potential diagnoses were excluded."), *adopted sub nom. Pearson v. Berryhill*, 2017 WL 1364220 (Apr. 14, 2017).

The ALJ has a responsibility to "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)). This "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Baysden v. Colvin*, No. 4:12-CV-303-FL, 2014 WL 1056996, at *9 (E.D.N.C. Mar. 18, 2014) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). Given the significant amount of evidence in the record that would support a finding that Claimant's fibromyalgia was a medically determinable impairment consistent with Ruling 12-2p, the ALJ should have attempted

to further develop the record related to Claimant's fibromyalgia diagnosis.

The ALJ's analysis of whether Claimant's fibromyalgia was a medically determinable impairment is flawed and not supported by substantial evidence. This error potentially impacted each subsequent step of the sequential evaluation, because Claimant's fibromyalgia was not further considered. The Commissioner argues this was harmless error because the ALJ considered Claimant's pain at subsequent steps of the analysis. Def.'s Mem. [DE-24] at 7. However, consideration of Claimant's fibromyalgia would likely impact the ALJ's credibility determination, because it could account for increased severity of Claimant's pain and other symptoms, which the ALJ found were unsupported by "sufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged limitations." (R. 18); *see Batson v. Colvin*, No. 7:14-CV-48-D, 2015 WL 1000791, at *11 (E.D.N.C. Mar. 5, 2015) (recognizing that "objective tests are of little relevance in determining [fibromyalgia's] existence or severity.") (quoting *McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *9 (E.D.N.C. Aug. 23, 2012) (citing *Sarchet*, 78 F.3d at 306 (stating "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective"); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (explaining fibromyalgia patients generally "manifest normal muscle strength and neurological reactions and have a full range of motion"))). The RFC determination could also be impacted, because when a claimant has numerous impairments, including severe and non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations

omitted). The ALJ's error at step two was not harmless in light of the failure to consider Claimant's fibromyalgia at the subsequent steps. *See Barfield v. Colvin*, No. 4:15-CV-135-F, 2016 WL 4705672, at *5 (E.D.N.C. Aug. 19, 2016) (concluding the ALJ's erroneous conclusion at step two that fibromyalgia was not a medically determinable impairment "was not harmless in light of the ALJ's failure to consider Claimant's fibromyalgia at the subsequent steps[.]"), *adopted by* 2016 WL 4705545 (Sept. 8, 2016). Accordingly, it is recommended this matter be remanded for further development of the record and consideration of Claimant's fibromyalgia.

### ii. Migraine Headaches and Sleep Apnea

Claimant contends the ALJ erred in failing to consider, at any step in the evaluation process, her migraine headaches and sleep apnea. Pl.'s Mem. [DE-21] at 8–9. There is evidence of these impairments in the record, which the Commissioner acknowledges but argues the impairments are not severe and Claimant did not demonstrate they cause functional loss. Def.'s Mem. [DE-24] at 7–8. Claimant testified that despite taking medication she still experiences migraines two to three times a month, which can last for two to three days, cause her to vomit, and during which she cannot be exposed to light (R. 57–59), and medical records indicate Claimant's sleep apnea caused "unrefreshing sleep" and "daytime fatigue." (R. 806). The ALJ should have considered these impairments, and it is recommended that on remand the ALJ do so in conformity with the regulations.

### B. The ALJ's RFC Determination

Claimant contends the ALJ made several errors in formulating the RFC, including improperly evaluating the opinion evidence and her credibility and failing to conduct a function-by-function analysis. Pl.'s Mem. [DE-21] at 10–15. The Commissioner counters that the ALJ fully explained

13

the RFC assessment and properly assessed the opinion evidence and Claimant's credibility. Def.'s Mem. [DE-24] at 8–13.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

### 1. The Opinion Evidence

Claimant contends the ALJ erred in failing to give controlling weight to the opinions and medical evidence from Dr. Franco and Dr. Kishbaugh. Pl.'s Mem. [DE-21] at 14–15 (citing (R. 447, 565, 690, 874–78, 1009–16)). When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §

404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

As an initial matter, much of the evidence cited by Claimant is treatment notes that do not

15

contain "medical opinions," which are defined in the regulations as "statements from physicians and psychologists or other acceptable medical sources that reflect *judgments* about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). Therefore, "[o]nly those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (citations omitted), *adopted by* 2013 WL 5350870. Dr. Kishbaugh's cited treatment notes include Claimant's reports of her symptoms, examination findings, and diagnoses, but lack any *judgments* by Dr. Kishbaugh regarding this evidence. (R. 447–48, 565–66, 874–78, 1009–16). Claimant also cited a December 15, 2008 initial evaluation by a physical therapist that likewise notes Claimant's subjective reports of her symptoms and examination findings, but provides no judgments related thereto. (R. 690).

The ALJ also appropriately discounted Dr. Franco's December 4, 2010 opinion that Claimant was "totally disabled" due to fibromyalgia, osteoarthritis, chronic fatigue syndrome, iron deficiency anemia, chronic back pain, and depression. (R. 788). The ALJ explained the opinion "provides no analysis, rationale, or explanation as to how the conclusion was reached, other than citing various diagnoses" and was on an issue reserved to the Commissioner. (R. 20). These are appropriate considerations under the regulations and agency rulings. *See* 20 C.F.R. § 404.1527(c) (listing supportability as one of the non-exhaustive list of factors to consider in assessing medical opinions); *id.* § 404.1527(d) (explaining that opinions on issues reserved to the Commissioner, such as whether

16

a claimant is disabled, are not entitled to special significance); *see also Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given."). Accordingly, the ALJ did not err in evaluating the opinion evidence.

### 2. Credibility

Claimant contends the ALJ's credibility assessment violates *Mascio* by determining the RFC before evaluating credibility. Pl.'s Mem. [DE-21] at 11. When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations

17

and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

The ALJ found Claimant partially credible regarding the severity of her symptoms and limitations. (R. 17–18, 21). The ALJ first explained that Claimant's alleged limited daily activities could not be "objectively verified with any reasonable degree of certainty," but that even if they were limited as alleged, "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision." (R. 17–18). The court has previously found such reasoning to be erroneous. *See Thomas v. Berryhill*, No. 4:16-CV-00015-D, 2017 WL 1047253, at *10 (E.D.N.C. Feb. 15, 2017) ("The Commissioner does not argue, nor is there any requirement, that a claimant's reported activities be verified with objective evidence in order to be credible. The Regulations simply state that a claimant's statements will be evaluated in relation to the objective medical evidence and other evidence."), *adopted by* 2017 WL 1049472 (Mar. 17, 2017). It is unclear what objective verification is required, and the regulations provide that the ALJ "will not reject [a claimant's] statements about the intensity and persistence of [a claimant's] pain or other symptoms or about the effect [a

18

claimant's] symptoms have on [a claimant's] ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (finding "the ALJ's determination that objective medical evidence was required to support [the claimant's] evidence of pain intensity improperly increased her burden of proof.") (citations omitted). Moreover, the ALJ did not explain what these "other reasons" are that might account for Claimant's degree of limitation. (R. 17).

The ALJ also explains that "[t]o the extent that the claimant alleges she cannot work within the residual functional capacity, the undersigned finds the allegations not fully credible." (R. 21). The Fourth Circuit in *Mascio* criticized the use of similar boilerplate language that determined a claimant's RFC before assessing her credibility. 780 F.3d at 639. The ALJ in *Mascio* wrote that "statements by the claimant concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The Fourth Circuit found that such language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). Notwithstanding, the ALJ's error may be harmless if credibility is properly assessed elsewhere in the decision. *Id.* The ALJ cites two examples to support the determination that Claimant was only partially credible: first, that Claimant's testimony regarding her earnings was not supported by the record; and second, that Claimant's testimony she was prescribed a cane is not supported by the record. (R. 21). Neither reason is persuasive.

With respect to Claimant's testimony regarding her earnings, at step one the ALJ found as follows:

The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. She stated that she had no memory of earning any wages in 2009. Yet, the claimant's earnings record reflects earnings of $5,816.73 in 2009 (Exhibit 9D). Nonetheless, the earnings were under SGA levels. Thus, the claimant has not engaged in substantial gainful activity since the alleged onset date.

(R. 13). The ALJ asked Claimant about these wages at the administrative hearing, and Claimant

testified that she did not believe it was from work because she last worked in mid-August 2008. (R.

36–37). Claimant also testified that she received short term disability for one year after she stopped

working. (R. 40, 61). Evidence in the record corroborated Claimant's account, including her

statement at a May 2010 consultation that she "worked up until August 8, 2008 and went out on

family medical leave to rest and have more test[s] to be able to return to work in 12 weeks, but that

didn't happen and she had short term medical disability for 1 year." (R. 616–17). Thus, it is unclear

whether the earnings the ALJ was concerned with were attributable to short-term disability payments

or earnings from work. Furthermore, this alleged discrepancy has nothing to do with Claimant's

pain, other symptoms, or functional abilities, and the ALJ did not explain how it "undercut[s] her

subjective evidence of pain intensity as limiting her functional capacity." *Lewis*, 858 F.3d at 866;

*see also Mascio*, 780 F.3d at 639–40 (finding error where the ALJ rejected a claimant's statements

regarding the severity of her pain based on a reason that had nothing to do with pain).

With respect to Claimant's statement at the administrative hearing that a cane was prescribed

by Dr. Franco in August 2014, the ALJ found it unsupported by the record. (R. 21). Claimant

testified at the administrative hearing on August 5, 2014, that Dr. Franco had "just recently"

prescribed the cane. (R. 45). It appears the evidence that would have supported or refuted

Claimant's statement may not have been included in the record due to its recency, calling into

question the ALJ's reliance on its absence to discredit Claimant. Accordingly, the ALJ's credibility assessment is not supported by substantial evidence and on remand the ALJ should reassess Claimant's credibility.

### 3. Function-by-Function Analysis

Claimant contends the ALJ failed to conduct a function-by-function analysis as required by *Mascio*. Pl.'s Mem. [DE-21] at 12–14. In *Mascio*, the Fourth Circuit explained that when assessing RFC, Ruling 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d at 636 (footnote omitted) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). After considering all the evidence, the ALJ did conduct a function-by-function analysis and explained why he adopted the RFC, addressing specifically the various functional limitations (postural, standing and walking, cervical, atmospheric, manipulative, visual, and communicative, as well as mental limitations such as in concentration, persistence, or pace, social functioning, and adaption). (R. 21). While the ALJ could have done a better job in tying the evidence to his conclusions, when viewed in light of his previous discussion of the medical evidence, the analysis is sufficient to allow for meaningful review. *See Dunn*, 607 F. App'x at 276 ("[T]he fact that the ALJ could have offered a more thorough explanation for his decision does not change our conclusion that substantial evidence in

the record supports that decision."). However, given that the errors in considering Claimant's fibromyalgia and credibility, as well as the failure to consider Claimant's migraine headaches and sleep apnea, may impact the function-by-function analysis and ultimately the RFC, the ALJ should reassess as necessary the function-by-function analysis and Claimant's RFC on remand.

## C.     Hypothetical to the VE

Claimant argues that the ALJ failed to include her age and all her limitations and symptoms in the hypothetical to the VE. Pl.'s Mem. [DE-21] at 15–19. The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). In other words, the hypothetical to the VE must be based on an accurate RFC. *See Massey v. Colvin*, No. 1:13-CV-965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) ("VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC.") (citing *Walker*, 889 F.2d at 50–51).

With respect to Claimant's age, the ALJ did not ask the VE to consider it in the hypothetical. (R. 63–70); *see also* (R. 22–23) (stating at step five of the decision that, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's

education, work experience, and residual functional capacity."). The transcript of the administrative hearing reflects that the VE was present by telephone at the hearing and that the ALJ asked Claimant her date of birth, reflective of her age, at the outset. (R. 33–34, 36). The court need not decide whether this was sufficient to put the VE on notice of Claimant's age, because Claimant has failed to allege any harm resulting from ALJ's failure to state Claimant's age to the VE. Claimant does not contend that her age would preclude her from performing any of the jobs identified at step five or that she would have been entitled to a directed finding of disability under the Medical Vocational Guidelines. Accordingly, any error in this regard was harmless.

Claimant also contends the ALJ should have included her pain, sleep apnea, and migraine headaches in the hypothetical to the VE. Pl.'s Mem. [DE-21] at 19. However, these are diagnoses, which are considered in the prior steps of the sequential evaluation. An ALJ is not required to include diagnoses or symptoms in the hypothetical to the VE, but rather need only convey Claimant's limitations as determined in the RFC. *See Walker*, 889 F.2d at 50. The ALJ's hypothetical was based on the impairments and limitations he found to be supported by the record and reflected in the RFC. Nevertheless, as explained above, given that the errors at earlier steps of the sequential evaluation—specifically, in considering Claimant's fibromyalgia and credibility, as well as the failure to consider Claimant's sleep apnea and migraine headaches—may impact the RFC, the ALJ should reconsider, as necessary, the hypothetical to the VE on remand.

**D.    Appeals Council—New Evidence**

Claimant contends the Appeals Council erred in failing to incorporate new evidence submitted prior to the denial of reconsideration. Pl.'s Mem. [DE-21] at 20. The Appeals Council must consider evidence submitted by a claimant with his or her request for review "if the additional

23

evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.976(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). The court may remand a case pursuant to sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. The Appeals Council need not, however, review or consider new evidence that relates only to a time period after the ALJ issues the decision. *See* 20 C.F.R. § 404.976(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F. 3d 700, 702 (4th Cir. 2011).

The Appeals Council declined to consider medical records from Carolina Family Practice Centre dated October 13, 2015, concluding that because the ALJ decided the claim through

December 12, 2014, the information was "about a later time" and "does not affect the decision about whether you were disabled beginning on or before December 12, 2014." (R. 2). Claimant neither provides nor summarizes the new evidence and fails to explain how it relates to the relevant time period, and thus has failed to carry her burden. *See Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 WL 4899754, at *4 (E.D.N.C. Sept. 20, 2011) (explaining that claimant bears the burden of demonstrating that additional evidence is new, material, and relates to the time period before the ALJ's decision) (citations omitted), *adopted by* 2011 WL 4888868 (Oct. 13, 2011). Accordingly, the Appeals Council's failure to consider the new evidence was not error.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-23] be DENIED, and the matter be remanded to the Commissioner for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 4, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the _21_ day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge